IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 11-35-BLG-SPW |
| Plaintiff, | |
| vs. | ORDER |
| ALEX MEDICINE HORSE, JR., | |
| Defendant. | |

Defendant Medicine Horse moves the Court, for a second time, for compassionate release under 18 U.S.C. § 3582(c)(1)(A) in light of the COVID-19 pandemic. He is currently serving a 360-month sentence for aggravated sexual abuse. *See* Judgment (Doc. 98). His projected release date is October 18, 2037. *See* Inmate Locator, www.bop.gov/inmateloc (accessed Mar. 17, 2021).

Currently, two inmates and nine staff members at FMC Devens, Massachusetts, where Medicine Horse is incarcerated, have confirmed, open cases of COVID-19. Three hundred eighty-six inmates and 54 staff members have recovered, but ten inmates died. *See* Interactive Map, www.bop.gov/ coronavirus (accessed Mar. 17, 2021).

1

## I. Request to Warden

The controlling statute authorizes sentencing courts to "reduce the term of imprisonment" on a motion filed by either the defendant or his warden. A defendant is not permitted to file a motion in the sentencing court unless at least 30 days have passed since the defendant asked the warden to file a motion for him. *See* 18 U.S.C. § 3582(c)(1)(A).

The United States asserts that Medicine Horse's first and only request for release was made to the warden of his facility in April 2020. Medicine Horse asserts that his April request satisfies the statute's requirement. But a request made in April does not give the warden a fair opportunity to consider Medicine Horse's health status in December. Nor is filing a request difficult or burdensome. An inmate's request to a warden should be at least roughly contemporaneous with his motion to the court.

But counsel reports that Medicine Horse filed a new request in January 2021. *See* Reply (Doc. 146) at 2–3; Reply Ex. A (Doc. 146-1) at 1. More than 30 days have passed since then. The January request satisfies the statutory requirement, albeit in a backhanded fashion.

## II. Merits of the Motion

After considering the sentencing factors in 18 U.S.C. § 3553(a), the Court

2

may reduce Medicine Horse's sentence if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).[1] The applicable factors from § 3553(a) may include the "nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to deter criminal conduct and protect the public, and to provide effective correctional treatment, including education or vocational training and medical care. *See* 18 U.S.C. § 3553(a)(1), (2). The Court may also consider the advisory guideline range and the need to "avoid unwarranted sentencing disparities" among similarly situated defendants and to provide restitution to victims. *See id.* § 3553(a)(A), (6)–(7).

### A. Reason for Release

Medicine Horse must show his medical condition, including his age, constitutes an "extraordinary and compelling reason" to release him. A defendant

---

[1] The statute provides that any sentence reduction must be consistent with the applicable policy statement in the Sentencing Guidelines. *See* 28 U.S.C. § 994(a)(2)(C), (t); U.S.S.G. § 1B1.13(3) (Nov. 1, 2018). But the guideline has not been revised since Congress amended § 3582(c)(1) to allow defendants, not just the Director of the Bureau of Prisons, to move for sentence reductions. To date, the Ninth Circuit has not addressed the issue, but other appellate courts have concluded that U.S.S.G. § 1B1.13 applies only to motions for release filed by the Director. *See, e.g., United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1108–11 (6th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020). Whether the guideline is legally binding or not, it might be a useful *guideline* in evaluating the motion.

might have a terminal illness or some degree of debilitation that makes his situation in prison significantly more difficult than the ordinary prison experience. The previously applicable guideline, for instance, contemplated that a "serious physical or medical condition," "serious functional or cognitive impairment," or "deteriorating physical or mental health because of the aging process" might constitute an "extraordinary and compelling reason" for release if it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" and is something "from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A); *but see supra* n.1.

Medicine Horse is now 78 years old. Before the United States' response to his second motion was due, he tested positive for COVID-19. *See* Notice (Doc. 139) at 1–2; Medical Record (Doc. 2-2) at 5–6. He also has a history including hypertension, chronic kidney disease, diabetes, emphysema, and heart disease. He has had multiple strokes. Statistically, there is a strong correlation between these conditions and severe illness from COVID-19. Medicine Horse remained asymptomatic, and his likelihood of reinfection appears low, at least for some months. *See, e.g.*, Centers for Disease Control, *Duration of Isolation & Precautions for Adults*, www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html (accessed Mar. 17, 2021) (Summary ¶ 5). But it appears he may

4

experience longer-term consequences to his kidney function as a result of COVID-19. *See* Medical Records (Doc. 147) at 1, 7–11.

Despite his several conditions, Medicine Horse appears admirably resilient. He "was observed standing on his bed trying to cover the vent in the ceiling" on December 13, 2020, though he denied doing so. *See* Medical Records (Doc. 143-1) at 2. A note from October 30, 2020, states that he is dependent on his wheelchair but "is observed wheeling himself around his unit hurriedly." *Id.* at 19.

### B. Section 3553(a) Factors

The United States asserts that Medicine Horse remains a danger to his community. The Court agrees that a motion for compassionate release "is not an appropriate way to collaterally challenge [the] sentence," U.S. Resp. (Doc. 142) at 13, and will not entertain any questioning of the jury's verdict.

But Medicine Horse has obtained an updated assessment of the level of risk he would pose to his community if he should be released. The new report maintains that his risk of recidivism, as compared to other sex offenders, is "very low." *See* Sullivan Report (Doc. 138) at 8. As the United States points out, this is the same conclusion the original evaluation reached. *See* U.S. Resp. (Doc. 142) at 13–14. But there is an important distinction. The Court did not realize that the original evaluation assumed other victims existed. *See* Order (Doc. 135) at 4. The

5

new report clarifies that point. *See* Sullivan Report (Doc. 138) at 5 para. 1; *id.* at 7, 8. Medicine Horse has shown, as clearly as anyone convicted of a sexual offense can, that he poses a "very low" level of danger to the community. This fact weighs in his favor under 18 U.S.C. § 3553(a)(2)(C).

A jury found Medicine Horse guilty beyond reasonable doubt of an offense Congress deems so serious that it warrants a minimum of 30 years in prison. Medicine Horse's advisory guideline range was life in prison. At sentencing, the judge varied downward to the statutory mandatory minimum sentence of 30 years and found that term "more than adequately meets the purposes of sentencing" in light of Medicine Horse's "age and medical issues." Statement of Reasons (Doc. 99) at 1 § III; *id.* at 5 § VI; 18 U.S.C. § 3553(a)(2)(A).

To date, Medicine Horse has served about nine years. Nine years is a long time, especially for someone who had no prior convictions and who did many positive things for his community throughout his life, as Medicine Horse did. *See* Presentence Report ¶¶ 49–50. But it is also significantly less time than Congress decreed. To justify a defendant's release 16 years before his anticipated discharge date (with good conduct), a sentencing court should require a clear and convincing showing of both an extraordinary and compelling reason and satisfaction of the factors in § 3553(a).

Medicine Horse's motion meets that high threshold.  He may not be seriously debilitated, but his numerous medical conditions and his age make his situation, particularly in light of the global pandemic, extraordinary and compelling.  For a person in his circumstances, nine years in prison sufficiently reflects the seriousness of his offense and meets the other criteria of 18 U.S.C. § 3553(a).

One factor remains to be considered.  The Court anticipates that inmates in Medicine Horse's age group, especially at Federal Medical Centers, will have high priority for vaccination. *See, e.g.*, BOP COVID-19 Vaccine Guidance at 7 (Mar. 11, 2021), *available at* www.bop.gov/resources/health_care_ mngmt.isp (accessed Mar. 17, 2021).  Transporting Medicine Horse before he has had the opportunity to be fully vaccinated is unwise.

Accordingly, IT IS ORDERED:

1.  Medicine Horse's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) (Doc. 126) is GRANTED.

2.  As of the date of this Order, Medicine Horse's sentence is REDUCED to time served.

3.  This Order is STAYED for up to 30 days.

4.  If Medicine Horse has already received the first dose of a two-dose

7

vaccine regimen, he will not be released until two weeks after he receives the second dose.  If he has not received any vaccine, he may advise the Court whether he wishes to delay his release until he has been vaccinated.  But Medicine Horse cannot choose which vaccination he receives.

5.  The United States Probation Office must verify Medicine Horse's residence and establish a release plan with a provision for home confinement. Appropriate travel arrangements must also be made.

6.  Medicine Horse shall be released on the *later* of the following dates:

A.    The 15th day after he receives the second of a two-shot vaccine regimen or the first of a one-shot regimen; or

B.    When the Probation Office is satisfied that the requirements of paragraph five are met.

7.  If more than 30 days are needed to accomplish Medicine Horse's release, the United States must so notify the Court and demonstrate good cause why the stay of this Order should be extended.

8.  The United States Probation Office shall review Medicine Horse's conditions of supervised release.  If modifications are needed, the Probation Office shall notify counsel Peter Lacny.

9.  Medicine Horse must provide the Court with the complete address where he will reside upon release.

8

10.  The United States must ensure Medicine Horse is closely monitored for any signs of COVID-19 and must immediately advise counsel, the Court, and the United States Probation Office should Medicine Horse become ill or test positive for the virus or the disease before his release.

DATED this  18th  day of March, 2021.

Susan P. Watters
United States District Court